Hi everyone. The first case, before we call our first case, we want to thank Judge Pappert for joining Judge Roth and I on our panel for these cases we're having during the sitting week. So, welcome. Thank you. You're welcome. The first case we're going to hear this morning is Whitaker v. Superintendent. Council will hear you. It's Appellate No. 15-3365. Good morning. Peace to the court. My name is Will Soxsey on behalf of Mark Whitaker. I'd like to reserve three minutes for rebuttal, please. That'll be granted. Thank you. At Mark Whitaker's criminal trial, the government used a co-defendant's confession that directly accused Mr. Whitaker of participating in the robbery. The alteration of the confession to replace Mr. Whitaker's name with the descriptor, the other guy, was insufficient to obliterate any reference to Mr. Whitaker. Before we talk about the substance, because I think we're all familiar with the nature of that argument, we need to talk about relation back before we start about Bruton and whether or not there was a Bruton issue. How do you get around the fact that the redaction issue you were about to talk to us about occurred at a different time in the trial and sort of implicated different facts than the claim that is timely filed, which is the ineffective assistance of counsel claim? Your Honor, I believe that both claims share a common core of operative fact, and they both truly go to the same issue, which is the use of the confession at trial and in summation and the effectiveness of the redaction. And it's our position, of course, that it was ineffective, but just to remove any doubt, the prosecutor unmasked the redaction at close. But isn't that a different fact? Because we know that Mayo talks about relation back as in Rule 15 type of relation back, and you're arising out of the same occurrence. Isn't the unmasking a different occurrence than the sufficiency of the redaction? The unmasking is a continuation of the violation in a way, because our position, of course, is that from the outset, this confession was inappropriately redacted. And when the prosecutor during summation directly ties Mr. Whitaker to that confession and names him as the other guy, then any effect of that redaction is gone. And so really, if you think about it, the Bruton violation here, the direct Bruton violation, is embedded. It's a predicate of that ineffective assistance claim that was timely. The Bruton violation, I take your point to be, occurred when the judge ruled that the redaction, the other guy, would be allowed, correct? It seems to me if you read Washington, this court's case in Washington, it would seem to me that there's a pretty good case that you could make, that that's when the confrontation clause violation took place. And if that's the case, trial counsel did object to that, correct? And that was admitted over objection? That is correct. And then at trial, when confession was used, which, by the way, was literally the day before closings. It was the last piece of evidence that came in. When that confession was used, counsel renewed the objection and argued for further redactions. That was overruled. And so I think that I understand your question, Your Honor. And I agree that Washington does suggest we look at the time of the ruling. But in this case, I'm not sure that really makes sense because when you look at when the constitutional harm becomes right, it's not pre-file. It's when it's actually used immediately after Mr. Senevita's testimony and really to essentially bolster or corroborate a witness who was otherwise very shaky and subject to a very vigorous cross-examination. But I think my question went to, and I don't disagree with it, but it went to then the confrontation clause occurred way before closing the argument, which is the subject of the ineffective assistance claim, correct? Well, in a way, Your Honor, I think we could consider that the confrontation clause violation, and really the court kind of doubled down because there's really no – if the violation occurs pre-trial, but then the confession is not used, what is the harm? And I think ultimately that's what FRAZIER v. COPP stands for, and I know the government relies on that case in the Brown context to distinguish Brown. But if, for example, in FRAZIER where the confession is used in the opening statement but is never admitted at trial, there's a limiting instruction, there the Supreme Court says there's no confrontation clause issue. Here, the confrontation clause issue ripens, as it were, when the prosecutor puts that confession up, plays the video, then introduces evidence, corroborating evidence to sort of bolster that the confession was properly taken. And then immediately flowing from that, we go to closing where the prosecutor, to remove any doubt, says, and Mr. Whitaker is the other guy, not explicitly, obviously. The focus of the ineffective assistance at counsel claim and the counsel's failure, from your point of view, of not objecting when the prosecutor unmasked, we're looking at different actors. For the ineffective assistance at counsel claim, we're looking at who's the actor? The unmasking by the prosecutor and the counsel's failure. In the Bruton claim, the actors are the prosecutor's offering and the court's approval of the redaction. So, again, I'm focused back on the occurrence and the facts that give rise to the claims and whether using Rule 15 as the prism, as the Supreme Court directs us to, how can you say those are arising from the same facts or occurrence when you have different actors and different times, when the violation, from your point of view, occurs? I don't think the Supreme Court's test in mail requires a complete synchronicity of actors and claims. I think it's of the same time or type as the standard in Felix v. Nail and really ties back to that Rule 15c standard that we're all familiar with, the common core of operative fact. Here, I think there's enough. The Bruton claim, the fact that the confession and how it was redacted, is essential to both the ineffective assistance and to the direct claim, obviously, because you don't even get to ineffective assistance if there was nothing wrong with that confession. If, hypothetically, we were to conclude that the claim relates back, the Bruton claim relates back, and is deemed timely when the ineffective assistance of counsel claim, should we remand and ask the district court to evaluate whether there was a Bruton violation and if there were, whether or not it was substantial and injurious? I don't think you need to do that in this case here because the Bruton violation is apparent. When you look at this confession, there's no question that it was ineffectively redacted. Yes, it used the descriptor, the other guy, but it was very apparent in context where you have Mr. Stewart identifying himself, identifying Mr. Shakur, and then identifying the other guy. That's much like this court's precedence where you have one person named, I think it's the Washington case where you have one person named and another person anonymized. That's not good enough. If you can sort of figure out there's something amiss, if the jury can figure that out, that's not enough. Even worse here, you have one instance, one passage of the confession where it says, I don't remember the other guy's last name. So that obviously implies that Mr. Stewart knew the other guy's first name and that something has been changed here. So there's an obvious sign of alteration, and that violates Gray. It's clearly established precedent. Can't we depend upon the jury heeding the judge's instructions that this should not be used against Whitaker? Your Honor, under Bruton, the potential harm of this kind of violation is so great that no admitting instruction could be sufficient, and that's a very consistent thread through Bruton, Richardson, Gray, and this court's precedence. You can't cure, you can't unring the bell, as they say. But here you had other identification evidence. It's not like this was the only evidence against Mr. Whitaker. That's true, Your Honor, but the evidence here was very scant. You did have two witnesses who purported to identify him, one of whom was subject to what's called Kloiber instruction because her identification was very suspect, and the DA sort of stepped away from her in closing, and the other who was, again, subject to a pretty vigorous cross-examination, and there were a lot of inconsistencies in his story, which would give rise to reasonable doubt. There was also no forensic evidence whatsoever tying Mr. Whitaker to this crime. There were numerous fingerprints taken at the scene, fingerprints of Mr. Shakur and Mr. Stewart. None of Mr. Whitaker found, none confirmed. So there was additional witnesses who came to court, testified, including two men who were allegedly held up by the third participant. They did not identify Mr. Whitaker. They could not identify who the assailant was. So I think that when you look at, on balance, and I also would submit that when you're dealing with a confession, we know how powerful that is, and we know that, you know, you don't have to trust me, says the DA. Talk to Mr. Stewart and listen to what Mr. Stewart has to say. That's the closing. And here I think you put your thumb on the scale a little bit because the confession has such a powerful prejudicial effect. Can I turn your attention to the ineffective assistance claim for a second? Sure. Assume that we were to conclude that the Supreme Court and the district court, by relying on Brown 1, which is a case you now know the court has rejected, so we're going to call that Brown 2. Assume that we conclude that the use of Brown 1 was contrary to Supreme Court precedent. Should we remand to have the district court then determine de novo whether or not there was ineffective assistance by the failure to object? I think, at a minimum, that's what has to happen here because I do agree with you that Brown 2 shows or establishes that it was an unreasonable application. Brown was an unreasonable application of clearly established precedent. So I think, at a minimum, we're talking a remand here so that the district court can reconsider ineffective assistance in light of Brown 2. And I think you can go further because, as I said, the direct brutal violation does relate back and is apparent on its face. I also think that, given the circumstances here, counsel's performance was objectively deficient. How can you say that, though? If the conduct we're judging is his conduct during the course of the summation and he objected seven times, it's highly unusual for a lawyer to object during a summation to begin with, but he found seven occasions where he thought something was problematic. How can we say that there was nothing strategic about what he decided not to object to with that volume of objections? Well, I think you put your finger on it, Judge. It is very unusual. I think that the government also says, well, maybe he did have a strategic reason for kind of holding back because you don't want to object during closing. But Mr. Murski was popping up and down like a jack-in-the-box during this closing, and I think that demonstrates he was acutely aware of the prejudice here. He argued very strenuously to keep it out pre-trial. He argued again at trial, and then when this came, maybe, I don't know, maybe his attention was not focused, but he missed it. Well, maybe he didn't, and I'm wondering if your points about the stint, I think is the word you used, nature of the evidence, work against you here. Trial counsel, as you correctly point out, objected all along the way. It seems to me he had a handful of problems he was dealing with, right? A couple of them were the testimony from the witnesses in the bars. You correctly point out that there was a lot of fodder for cross-examination and for undermining the reliability and the credibility of that testimony. Maybe trial counsel was thinking, look, my strategy here is going to be cut the legs out from under all of the eyewitnesses and then rely on the jurors following the judge's instruction that they can't use the confession against Mr. Whitaker, and because of that, I've already objected enough, I'm not going to raise another red flag at closing and draw attention to that. All he really needed was any reasonable argument that he satisfied strict on. Right under the double deference, we have to give it. Why isn't that good enough? I see my time is up. Can I answer your question, I assume? Yes. Thank you. I have to check on that one, too. I understand. Well, I think that, I believe that the fundamental issue here is that we don't really know, and so maybe that's why remand would be appropriate, because there was never, neither the trial court, excuse me, neither the state court nor the district court ever truly reached this issue of whether Mr. Mursky's performance was efficient, because they both applied Brown 1 as sort of a bright line rule to say this claim, this objection would have no legs, it's meritless. And so we don't know whether there was a strategic reason for his failing to object, but I would contend that when you look at the context of what he was doing in that closing and how he appreciated the significance of that confession and where it was placed in trial and how it was used at closing, he objectively had to realize there was a need to do something, mistrial, object, and he failed to do that, and that was ineffective. Okay. Thank you. Thank you, sir. Counsel. Good morning, Your Honors. May it please the Court. I'm John Goldsboro from the Philadelphia District Attorney's Office, here representing the appellees, the prison warden, and the state. Honors, two years ago the district court correctly found that in 2010 the Superior Court reasonably found that Whitaker's summation ineffectiveness claim was meritless, and that decision has to be judged according to Supreme Court precedent as the time of the state court decision, not as of later decisions, whether this court or of the Supreme Court itself. But doesn't Brown II in its analysis say that the Supreme Court precedent as it stood would demonstrate that this would be contrary to Supreme Court precedent, and aren't we bound to follow that? Even if the decision, even if Brown II got articulated some period of time after the district court ruled, it was ruling on Supreme Court precedent that existed when the Superior Court ruled. Not according to Supreme Court precedent as to the effect of Edna, which is what we're operating under here. White v. Woodall in 2014, Virginia v. LeBlanc just this summer, just before the term ended, make it very clear that circuit precedent about what Supreme Court precedent means is not to be considered in these cases. Only Supreme Court precedent. And what we're talking about is beyond any prison debate, there has to be looking only at Supreme Court precedent. We have to determine whether what the state courts did was reasonable. So it's your position that those two Supreme Court cases say that if a circuit court looks at existing Supreme Court precedent that existed at the relevant time and concludes that the conduct that occurred was contrary to Supreme Court precedent, we have to ignore that? If it finds that it's contrary to, it's part of calculus, but it's not that it should be ignored. It's what is binding. What we're talking about here is the standard of is this question that was before the state courts subject to debate among reasonable jurists in light of holdings of the U.S. Supreme Court. That is the standard. But wasn't the Supreme Court holding in Brown II that Brown II depended upon in existence at the time that the Superior Court decision in this case occurred? Yes, they were in existence. However, they're subject to reasonable debate because if we look at other circuits' interpretations of Bruton, Richardson, and Gray, what we find is- But we aren't necessarily looking at other circuits. We're looking at the Supreme Court precedent. Yes. Whether it was articulated or not, the Supreme Court precedent was there, and you can't simply ignore it because it wasn't spelled out in Brown II yet. But evidence of debate and different circuit interpretations shows what the state courts did was reasonable, and that's the point here in looking only at the Supreme Court holdings. A circuit's later- But isn't that our decision to make whether that was reasonable or not? Yes. Yes, indeed. And that reasonability decision has to be made in light of only Supreme Court holdings. So that's the point as to the ineffectiveness claim. How do you get around the fact that we had all this other precedent on Bruton, and we keep telling folks who follow Travers that they're mistaken in doing that? Certainly. Well, of course- And that existing Supreme Court precedent- Our court, fortunately, had three judge panels who put them together for us and said, this is contrary to Supreme Court precedent. Yeah. Stop using Travers. And yet the court keeps using Travers. I believe it's not- it's never been held contrary to it. It's an unreasonable application of, in this court's line of interpretation, of the Bruton Trilogy, as my opponent calls it. But that is not before the court. That claim is untimely. It was only asserted in a reply brief that was after the deadline. And in AEDPA, it has to relate back under the male versus Felix line. It's different in time and type, as Your Honor, Judge Kravich pointed out. The confrontation claim occurred in the pretrial motion. That is the time of that. The summation was 20 days later. That's a different time. And in terms of type, we're talking about the summation claim being a stripling claim and the Bruton claim not being a stripling claim. It's different. Well, the confrontation clause claim arguably arose pretrial, right? I mean, if you read Washington, there's a good argument. I think you could argue it either way, and I know you probably would if you could or if you had to. But really, the closing argument is what did it, right? I mean, I think the risk of the pretrial ruling was the jurors may very well put two and two together because there's three people, two of them named, and the other one's sitting at the defendant's table. But by the time you get to the closing argument now, any chance of the jury not putting two and two together has really gone out the window. So isn't there an argument for that's the real serious, that's where the rubber hit the road and that's where counsel should have been a little more active? Well, there are two things I have to say, or I mean three. One is that in closing argument, the presumption that juries follow their instructions is nearly sacrosanct, and their instructions were very clear here. Well, isn't that different with Bruton? Yes, it's different, but we're talking about an ineffectiveness claim now. That's summation. And in summation, when the prosecutor says, and by the way, there was no unmasking, but we have two incidents, not three, in which he said that they shared in the proceeds. And he is saying that that inferential, he didn't even mention the statement when he said those two things that were 115 pages apart. He didn't even mention the statement. And what he's saying is he's trying to counter co-defendant Stewart's claim that the gun went off. It was just an accident. He said this was no accident. They all three came in together. They were casing the place. This is a bar where there are people drinking. There are dancers in this go-go bar dancing on the stage. And they're looking around. There are two entrances. One's going in and out. They're meeting in a bathroom. They're talking to each other. And then all at the same time, one goes around from the east entrance to the west, and the two go in the east entrance. They're sitting right near the break in the bar, which normally, that's very unusual, just given where the stage is and given the setup of the bar. Apparently, the bartender normally would say, hey, get away from there. I don't want you sitting there. And they go right in, and one of them immediately shoots the bartender and grabs the cash while the other one is holding his gun on everybody else in the bar and shoots at the one person who doesn't dive down. And he says they all – this was obviously planned. This was a planned thing from start to finish, and they all did it together, and they all shared the proceeds. They all shared the proceeds. That piece of evidence, the only source that I could find in the record for it, they all shared in the proceeds, was the brutalized statement. Yes, that is correct. The things you've just recounted came from sources that are not implicated by bruteness, eyewitnesses largely. That's right. So that isn't the problem that they shared in the proceeds piece. It's the only piece that comes from the brutal statement, and that, by implication, had to involve Mr. Whitaker. So this is not an unmasking where he's saying the other guy is Whitaker. No. He's saying they all shared in the proceeds. You have to put two and two together. That's differential implication. That's very different. And, again, the jury is presumed to follow its instructions that argument is not evidence. That's very clear. So in any event, I'm sorry, I was trying to get back my – so there's no unmasking. He's talking about that. And, in addition, Your Honor, if we're talking about some kind of a violation here, then clearly this claim has not been considered by the district court. And Your Honors were talking about potential remands. I agree, of course, that the claim has no merit. It's not before the court. You're talking about the bruten claim. Right, bruten claim. But if this court were to disagree, the district court has never considered it. So it would have to be remanded. But that's unnecessary because here, clearly, there was no substantial injurious effect because, as Your Honor, Judge Roth pointed out, there is plenty of other evidence. We do have two good IDs. And, yes, there's no forensic evidence. I don't know that the evidence against Whitaker was as strong as it was against Vasquez. How do you square the evidence against Whitaker with Vasquez and this court's holding in Vasquez? So what we have here is putting together all the pieces of the puzzle of the many witnesses. So, first, we have seven people saying three robbers did this together, methodically. One saying the three guys ran. He's outside. Three guys ran out of the bar all at once and got into a gray car and sped off. All who agree that the third guy goes over to the west entrance and comes back at the bar on the other side of the stage and that the two on the east side act together, pull out their guns, and everybody sees that. The guy goes over. Yeah, but all the jury is hearing about this principally is the witness's testimony. And counsel points out, and I think the record supports it, I don't know that I'd call the evidence scant, but a good trial counsel could have undermined the direct evidence, if you will, the testimonial evidence in Vasquez. There was a lot more than that. I mean, the only real, as I read the records, I understand the record, the only thing really tied Whitaker to this other than the, I'll use a word you don't like on masking, was the testimony from the woman who was the prior bartender, her brother, and the boyfriend. Right? But that was all subject to some scrutiny. It was, Your Honor, but if you look at it all together, and in addition you have the prison conversation, which does show that he knew Shakur, that he trusted Shakur to call his family. And that, too, was subject to a little bit of challenge. I'm very skeptical of prison conversations. Well, Your Honor, this was actually corroborated by the corrections officer who gave a statement that was admitted at trial, this entire account. And, in fact, the lunch plate that he was given, the styrofoam plate on which he used his fingernail to write down the phone number that Mark Whitaker kept repeating for Shakur to call, which turned out to be Whitaker's phone number, the phone number of his brother and sister, that plate was admitted as evidence as well. And then Mr. Chenegover went back to his cell and took detailed notes using the notes that he had taken on the plate in kind of a shorthand and filled it out with what he immediately remembered right then. And that was admitted at trial. So we have corroboration. It's not just some kind of crazy story. Certainly the odds are kind of low that this would happen, but this is an unusual situation. He's being brought back from court where he's just testified against Shakur and he has an order, a stay-away, or rather a protective order to keep him away from him. And the guy he just testified against is put in the holding cell right next to him. So he's concerned about that. That's why he ducks down and then he hears him talking to somebody else. And he realizes he's calling Mark. He doesn't know his name. So he asks the corrections officer what his name is so he can have a protective order against him as well to keep him away from him. So there's a lot of corroboration. It's not just that. So we have the two IDs from Don and Mr. Shelley, which is the in-court ID, but we also have Thomas Cheneviva. And there is a good explanation for why his ID came late. The crime occurred in 1999, and his initial ID was in 2002. And the reason is that he went down to Florida and the police lost touch with him. They tried to find him. They continued to try to find him, and they couldn't until he was located in custody. And when he was brought in, that's when he was brought back. Counsel made the point that there was no forensic evidence. In Vasquez, you had fingerprint evidence implicating Vasquez as the shooter. Yet this court still said that that wasn't enough to overcome the Bruton violation. I mean, if that wasn't enough, and this, I mean, match that up against the jailhouse, the overhearing in the jailhouse, the couple-year-late identification, no, there was three, no, there was two. There is a newer case having to do with harmless error in the Bruton context, Johnson v. Ramos, that this court decided. And we did cite that in our brief, and I think you'll find that the evidence in that case was somewhat similar to the evidence in this case. We have accurate descriptions of Mark Whitaker from four witnesses, from Zingani, Malika Hardy, who was the dancer on the stage, Thomas Cheneviva, and Donna Mastichelli. We have another witness, Zingani, the one who was shot and survived, who didn't identify him, but he sees the third guy go over there and he sees him with a gun. So there are two people who see the third guy over there with a gun. Everybody agrees that there's a third guy over there and that he's heavyset. Well, that's accurate. Whitaker is more heavyset than the other guys. And Bockington and Clark, sure, they didn't make an ID, but that's because he immediately, when he comes to the door, he says, don't let me get down on the floor. They don't look at him. They survived. They didn't look at him. It was clear, as Mark Gilson argued in his closing, if anybody resisted in any way in this case, they would be shot. If I could ask you about, back to the ineffective assistance claim for a moment, please. Yes, ma'am. The superior court ruled on Brown 1, and our court has said Brown 1 is incorrect. Yes, ma'am. If that's the only grounds that was offered, do we need to remand? If your honors believe that it was an unreasonable application of the United States Supreme Court precedent, then the answer would be yes, that the district court should reconsider. But it was a reasonable interpretation in light of Greene, Greene v. Milakovic, which we cited, simply because, again, the state court decision has to be looked at in light of U.S. Supreme Court holdings at the time that the state court decided. Now, I just want to follow up on that. You call it an unreasonable application, but didn't Brown use the language contrary to? I think you corrected me earlier about unreasonable and contrary, and you're right. They are different. But didn't Brown 1 talk about being contrary to Supreme Court precedent? Your honor, I apologize. I would have to check on that. I thought it was a reasonable application. You should. Okay. Thank you, your honor. Okay, thanks a lot. And we'll hear your adversary on the phone. Thank you. I want to start with Brown and a couple points. First of all, I do believe, I just checked very quickly, and I believe that the court, this court, found it was an unreasonable application of clearly established precedent. Second of all, both you and Judge Roth are absolutely correct. Brown 2 decides this issue about whether Brown 1 was unreasonable or not. And I know that counsel is quibbling, and he says, well, look at other circuits. Sometimes he says don't look at circuit court cases, and other times he says look at other circuits. But the fact of the matter is under the internal operating procedure of this court, you can't overrule the Brown 2 panel. And I think you're also right, Judge Roth, that Brown 2 was based on Richardson. It was not, and Richardson was decided well before this case, well before the Brown case, and Richardson there, the Supreme Court found that the prosecution undoing the effect of the redaction during closing was error. So it was clearly established that as of the time of Richardson. Second, I'd like to move and just touch on a point you made, Judge Schwartz. You're absolutely right. Traverse is a problem, and it's a problem this court has addressed several times. Washington, Ellie, or Ellie Vasquez all had to deal with it, and this is the greatest iteration of the Traverse problem. Traverse stands for the proposition that there's a bright line test that you can apply here. So long as you use the words the other guy or the other guys, that's good enough, and you give a limiting instruction, that's good enough. That's exactly what the government is advocating here, and that's just wrong. Just very quickly on the relation back point, I think counsel, I heard counsel to be arguing that these are different. The claims here are of different type because one's an ineffective assistance strickland and one is a direct claim, and I would just direct this court to your prior decision in the Hodge case where there was an ineffective assistance claim. I think it's actually kind of the reverse of this. There was a timed direct claim and an untimely ineffective assistance claim, and the Third Circuit found that the claims did relate. Was that out of a set of jury instructions, or do you remember what the two claims were? The direct claim was whether the defendant's rights were violated when he was not timely notified of his right to appeal, and then the ineffective assistance was the lawyer should have told him. Right, okay. And there you can see there's a connection. Just like here you can see there's a connection between the confession should not have come in and the lawyer should have objected when the prosecutor misused the confession. Very briefly on the summation point, the government has made this in their briefs and made it again here. The fact that there's a separation of 100 pages doesn't matter if you look at Brown II.  Once the confession is used against Defendant 1, the confessor, and once it's used against Mr. Brown, and it did not matter. Okay, thank you very much for a well-argued case, Counsel. We'll take the matter under advisement.